# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDREW DAVID WETZEL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6353** |
| **RODNEY J. STRAIN, JR., ET AL.** | **SECTION "J" (3)** |

## ORDER AND REASONS

Plaintiff, Andrew David Wetzel, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 against Sheriff Rodney J. Strain, Jr., Warden Gregory Longino, St. Tammany Parish, and the St. Tammany Parish Jail. In his complaint, plaintiff stated his claims as follows:

> The St. Tammany Jail returns mail to me from my family members as well as some legal mail. Mail address to my cell-mate from my family without there name or return address gets IN. The mail box is not locked and allows other inmates to go through everyone's mail & even remove other's people mail. The mail deputy places the mail on the table &/or door without giving it to the person to which it is address, allowing other inmates to get access to other's mail. Grievances & complaints about this issue doesn't get answered.[1]

Plaintiff subsequently amended his complaint to add Deputy Gary Cassale as a defendant.[2]

On January 9, 2010, plaintiff's claims against St. Tammany Parish and the St. Tammany Parish Jail were dismissed with prejudice.[3]

On August 6, 2010, the remaining defendants filed a motion for summary judgment.[4] Plaintiff was ordered to file a memorandum in opposition to that motion;[5] however, he has not

---

[1] Rec. Doc. 1, p. 5.

[2] Rec. Docs. 16, 17, and 18.

[3] Rec. Doc. 32.

[4] Rec. Doc. 47.

[5] Rec. Doc. 49.

complied with that order. Accordingly, the parties having consented to the jurisdiction of the undersigned United States Magistrate Judge,[6] the Court hereby **GRANTS** defendants' unopposed motion for the following reasons.

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory

---

[6] Rec. Docs. 36 and 37.

statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In their motion for summary judgment, defendants argue that they are entitled to judgment as a matter of law because plaintiff failed to exhaust his administrative remedies before filing this lawsuit. For the following reasons, the Court finds that defendants are correct.[7]

The Prison Litigation Reform Act of 1995, as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The United States Supreme Court has held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The Supreme Court has further held:

> Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." ...
> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

---

[7] Because the Court agrees that this lawsuit must be dismissed based on plaintiff's failure to exhaust his administrative remedies, the Court need not address the alternative grounds for dismissal asserted by defendants in their motion.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (citations omitted).

In support of their motion, defendants submitted an affidavit executed by Captain David Hanson. In that affidavit, Hanson stated:

4. The St. Tammany Parish Jail implemented an Inmate Complaint Procedure in place and available to all inmates at the St. Tammany Parish Jail at the time the events in the above captioned lawsuit occurred.

5. The Inmate Complaint Procedure was implemented in order for inmates to try to resolve their problems before filing a grievance through the jail's administrative remedy procedure.

....

7. If an inmate's complaint is not remedied through the inmate complaint procedure, the inmate may then proceed to the jail's official grievance process, which is called the Administrative Remedy Procedure.

8. The St. Tammany Parish Jail has an administrative grievance process called the Administrative Remedy Procedure (ARP) in place and available to all inmates incarcerated at the St. Tammany Parish Jail and was available to all inmates at the time the events alleged in the above captioned lawsuit occurred.

9. All inmates are entitled to use the jail's administrative remedy procedure, including Department of Corrections inmates, parish jail inmates, and pre-trial detainees.

10. A summary of the jail's administrative remedy procedure could be found in the St. Tammany Parish Jail Inmate Handbook that is given to every inmate who is booked into the St. Tammany Parish Jail....

11. A copy of the complete administrative remedy procedure may also be found in the St. Tammany Parish Jail law library wherein access to the procedure is available to all inmates and was available to all inmates.

12. Both the Inmate Complaint Procedure and the Administrative Remedy Procedure were posted in every housing unit of the St. Tammany Parish Jail.

13. The complaint form and grievance forms were available in every housing unit at the St. Tammany Parish Jail and were made easily accessible to all inmates.

14. An inmate could also ask any jail deputy for the complaint or grievance forms.

15. To initiate the grievance process, an inmate must fill out the inmate grievance form, which is made easily accessible to all inmates in the jail. In lieu of the form, an inmate may submit a written communication containing the words "This is a grievance though the ARP."

16. Under the grievance procedure available at the time of the alleged incident, a grievance must be filed within ninety (90) days from the date of the incident giving rise to the grievance occurred. Any grievance filed more than ninety (90) days after the incident is rejected as untimely.

17. As the Inmate Affairs Director, I was the First Level Respondent in the grievance process. As the First Level Respondent, I must respond to the inmate's grievance within fifteen (15) days from the date the request is referred to me. This step is designated as the First Step Review.

18. If an inmate is not satisfied with the results of the First Step Review, the inmate may appeal to the Warden within five (5) days of the inmate's receipt of the response by the First Level Respondent. This step is designated the Second Step Review. The Warden has twenty-five (25) working days to reply to the appeal.

19. If an inmate does not like the results of the Second Step Review, the inmate may appeal to the Sheriff within five (5) days of the inmate's receipt of the reply. The Sheriff has forty (40) working days to reply to the appeal.

20. If the inmate is not satisfied with the results of this final level of review of the jail's administrative grievance process, he may then file suit.

21. The inmate, Warden, or Sheriff may request a five (5) working day extension of time in responding to the grievance.

22. If an inmate does not receive a response to a grievance or appeal within the time allowed by the First Level Respondent, Warden or the Sheriff, an inmate would still be required to follow through to the next step of the grievance process.

....

24. Inmate Andrew David Wetzel never filed any grievance concerning his complaint about the mail procedure at the St. Tammany Parish Jail and therefore, never appealed any such grievance to the Warden or Sheriff.

25. On December 16, 2009, more than three months after the lawsuit was filed, plaintiff Andrew Wetzel filed a complaint in accordance with the Inmate Complaint Procedure. In the complaint, inmate Wetzel stated that he was not receiving all of his mail. It was answered and stamped December 16, 2009....

26. After inmate Wetzel's complaint of December 16, 2009 was answered, he did not file a grievance in accordance with the jail's Administrative Remedy Procedure, and has never do so.

27. I am familiar with plaintiff's complaint that commenced this lawsuit and the alleged jail complaints and grievances which he attached to it. These complaints and grievances are not in inmate Wetzel's administrative file and they are not date stamped as they would have been if he had presented them to any deputy.

....

29. As explained in paragraph 22 of this affidavit, if the inmate does not receive a time [sic] response from the first level respondent or the Warden, then he is still required to file an appeal to the next level respondent, which would be the Warden or Sheriff, in order to exhaust all of his administrative remedies. Even if inmate Wetzel had filed any of the grievances attached to his lawsuit with anyone at the jail he did not appeal to the next level after receiving no response.[8]

As noted, plaintiff never responded to defendants' motion for summary judgment or in any way rebutted their evidence regarding his failure to exhaust his administrative remedies.

Obviously, the defendants dispute whether plaintiff ever submitted to prison officials the grievances attached to his federal complaint. However, they correctly note that the attachments, even if they are authentic, relate only to the informal complaint process and the first step of the three-part administrative remedy procedure. Tellingly absent from plaintiff's attachments are copies

---

[8] Rec. Doc. 47-6, Affidavit of Captain David Hanson.

of any second-step or third-step appeals, and the Court notes that plaintiff has not proffered any such documents to rebut defendants' summary judgment evidence.

Moreover, even if the attachments are authentic, they do not establish exhaustion; on the contrary, they in fact prove that plaintiff's claims were not exhausted at the time this lawsuit was filed. The earliest first-step grievance attached to plaintiff's complaint is dated August 1, 2009. Because he purportedly received no responses to his grievances or appeals, that grievance, even if appealed, was not exhausted until at least eighty days after filing when all response delays had expired (i.e., fifteen days for the first-step response + twenty-five days for the second-step response + forty days for the third-step response). Because plaintiff's federal complaint was filed on or about September 9, 2009, only thirty-nine days after the August 1, 2009 grievance, his administrative remedies clearly were not exhausted at the time of filing.[9]

Therefore, even if plaintiff's attachments are authentic, which is doubtful at best, and if he is given the benefit of every doubt regarding exhaustion, his administrative remedies were not exhausted until *after* this lawsuit was filed. However, that is clearly insufficient. The PLRA "plainly requires that administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending." Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (emphasis in original). In Wendell, the United States Fifth Circuit Court of Appeals noted:

> Absent a valid defense to the exhaustion requirement, the statutory requirement enacted by Congress that administrative remedies be exhausted *before* the filing of

---

[9] A prisoner's federal complaint is considered "filed" when it is given to the prison authorities for mailing to the Clerk of Court. Cooper v. Brookshire, 70 F.3d 377, 378 (5th Cir. 1995). In the instant case, plaintiff's federal complaint was signed on September 9, 2009, and the Court assumes that it was given to prison officials for mailing on that date. In any event, it was actually received by this Court on September 14, 2009, which is also while plaintiff's administrative remedies would have still been pending.

7

suit should be imposed. To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.

Id. at 890-91 (emphasis in original) (citations omitted).

Accordingly, it is **ORDERED** that defendants' unopposed motion for summary judgment is **GRANTED** and that plaintiff's claims against Sheriff Rodney J. Strain, Jr., Warden Gregory Longino, and Gary Cassale are dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.[10]

New Orleans, Louisiana, this eighth day of September, 2010.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] If an inmate files in federal court an *in forma pauperis* complaint containing claims that have not been exhausted through available administrative remedies, those claims should be dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998). Plaintiff filed this lawsuit *in forma pauperis*. Rec. Docs. 2 and 3.